**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **KIRK A. FINLAY** | * | |
| **Plaintiff** | * | |
| **v.** | * | **CIVIL NO. JKB-15-1184** |
| **FORTIS INSTITUTE-TOWSON** | * | |
| **Defendant** | * | |

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

<u>**MEMORANDUM**</u>

*I.  Background*

     This action is brought by Plaintiff Kirk A. Finlay against Defendant Fortis Institute-Towson ("Fortis")[1] and alleges racially discriminatory discharge and hostile work environment in violation of 42 U.S.C. § 1981 (Count I), racially discriminatory discharge and hostile work environment in violation of Title VII (Count II), racially discriminatory discharge in violation of 42 U.S.C. § 1981 (Count III), hostile work environment in violation of 42 U.S.C. § 1981 (Count IV), discriminatory discharge based on disability in violation of the Americans with Disabilities Act ("ADA") (Count V),[2] and termination in violation of the Family and Medical Leave Act ("FMLA") (Count VI).  (Compl., ECF No. 1.)[3]

     Now pending before the Court is Fortis's Motion to Dismiss for lack of subject-matter jurisdiction and for failure to state a claim or, in the alternative, for summary judgment under

---

[1]  According to Defendant's Motion to Dismiss, Fortis Institute-Towson is a trade name used by EFC Trade, Inc., Plaintiff's former employer and the proper entity for this suit.  (*See* Def.'s Mot. to Dismiss Supp. Mem. 1 n.1.)  The Clerk will be directed to amend the docket to reflect the proper party name.

[2]  Plaintiff seeks to voluntarily dismiss this claim in his Opposition.  (*See* Pl.'s Opp'n, ECF No. 6 at 1 ("Plaintiff will voluntarily dismiss his claim under the ADA (Count V) . . . .").)  The Court will dismiss Count V without prejudice.

[3]  Plainly, Finlay's complaint includes some overlapping counts.

Rules 12(b)(1), 12(b)(6), and 56 of the Federal Rules of Civil Procedure.   (Def.'s Mot. to

Dismiss, ECF No. 4.)   Also pending before the Court is Finlay's Motion for Leave to File

Surreply.  (ECF No. 13.)  The issues have been briefed (ECF Nos. 4, 6, 12-14), and no hearing is

required, Local Rule 105.6 (D. Md. 2014).  For the reasons discussed *infra*, Defendant's motion

will be granted in part and denied in part, and Plaintiff's motion will be granted.


## II.  Standard of Dismissal for Lack of Subject-Matter Jurisdiction

A motion under Federal Rule of Civil Procedure 12(b)(1) challenges a court's

subject-matter jurisdiction.  This challenge proceeds "in one of two ways."  *Kerns v. United

States*, 585 F.3d 187, 192 (4th Cir. 2009) (citing *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir.

1982)).  "First, the defendant may contend 'that a complaint simply fails to allege facts upon

which subject matter jurisdiction can be based.'"  *Id.* (quoting *Adams*, 697 F.2d at 1219).  "In the

alternative, the defendant can contend . . . 'that the jurisdictional allegations of the complaint

[are] not true.'"  *Id.* (alteration in original).  The first case represents a "facial" challenge, where

the plaintiff enjoys "the same procedural protection as . . . under a Rule 12(b)(6) consideration,"

and the second presents a "factual" challenge, where a trial court may go beyond the complaint

without converting the motion to one for summary judgment.  *Id.*  A court may also raise this

issue *sua sponte* and must dismiss the action if it determines that it lacks subject-matter

jurisdiction.  *See* Fed. R. Civ. P. 12(h)(3); *see also Arbaugh v. Y & H Corp.*, 546 U.S. 500, 506

(2006).

When a defendant challenges a court's subject-matter jurisdiction by arguing that the

plaintiff's claims are outside the scope of the plaintiff's EEOC charge, the defendant is bringing

a factual challenge.  *See Bowie v. Univ. of Md. Med. Sys.*, Civil Action No. ELH-14-03216, 2015

WL 1499465, at *3 (D. Md. Mar. 31, 2015).  In a factual challenge, "'the district court is entitled

to decide disputed issues of fact with respect to subject matter jurisdiction.'" *Id.* (quoting *Kerns*, 585 F.3d at 192).  This latitude allows a court to examine the scope of an EEOC charge without converting the motion to one for summary judgment.  *See id.*

### III.  Standard of Dismissal for Failure to State a Claim

The purpose of a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) is to test the sufficiency of the complaint.  *See Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999).  This analysis involves "'[t]wo working principles.'"  *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  "First, although a court must accept as true all factual allegations contained in a complaint, such deference is not accorded to legal conclusions stated therein."  *Id.*  Therefore, "[t]he mere recital of [the] elements of a cause of action, supported only by conclusory statements, is not sufficient . . . ."  *Id.*  "Second, to survive such a motion, a complaint must state a 'plausible claim for relief.'"  *Id.* (quoting *Iqbal*, 556 U.S. at 678).  Plausibility means "that the factual allegations in the complaint are 'enough to raise a right to relief above the speculative level[.]'"  *Andrew v. Clark*, 561 F.3d 261, 266 (4th Cir. 2009) (quoting *Bell Atl. v. Twombly*, 550 U.S. 544, 555 (2007)).  This is a "'context-specific task'" that allows the court "'to draw on its judicial experience and common sense.'"  *Vitol, S.A. v. Primerose Shipping Co. Ltd.*, 708 F.3d 527, 543 (4th Cir. 2013) (quoting *Iqbal*, 556 U.S. at 679).

### IV.  Standard for Summary Judgment

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing predecessor to current Rule 56(a)).  The burden is on the moving party to demonstrate the absence of any

genuine dispute of material fact. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). If sufficient evidence exists for a reasonable jury to render a verdict in favor of the party opposing the motion, then a genuine dispute of material fact is presented and summary judgment should be denied. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). However, the "mere existence of a scintilla of evidence in support of the [opposing party's] position" is insufficient to defeat a motion for summary judgment. *Id.* at 252. The facts themselves, and the inferences to be drawn from the underlying facts, must be viewed in the light most favorable to the opposing party, *Scott v. Harris*, 550 U.S. 372, 378 (2007); *Iko v. Shreve*, 535 F.3d 225, 230 (4th Cir. 2008), who may not rest upon the mere allegations or denials of his pleading but instead must, by affidavit or other evidentiary showing, set out specific facts showing a genuine dispute for trial, Fed. R. Civ. P. 56(c)(1). Supporting and opposing affidavits are to be made on personal knowledge, contain such facts as would be admissible in evidence, and show affirmatively the competence of the affiant to testify to the matters stated in the affidavit. Fed. R. Civ. P. 56(c)(4).

## V. Allegations of the Complaint

Finlay is an African-American citizen of Maryland. (Compl. ¶ 3.) He was first employed as a part-time instructor by Fortis on or about November 2012 (*id.* ¶ 9), and was later promoted to a full-time position after excelling in that role (*id.* ¶ 9.)

On or about February 2015,[4] Fortis hired Mark McGinnis, a Caucasian, as its new Director of Education. (Compl. ¶ 11.) Immediately after starting, McGinnis began to show signs of distrust towards Finlay. (*Id.*) Finlay had been given keys to the building by his previous supervisor with the responsibility of closing it down. (*Id.* ¶¶ 9, 12.) In contrast, McGinnis

---

[4] The year "2015" appears to be in error. The Court presumes Finlay intended to refer to "February 2014."

followed Finlay around as he performed this duty.  (*Id.*)  This made Finlay uncomfortable, but he was respectful because McGinnis was his supervisor.  (*Id.*)

One night while following Finlay around the building, McGinnis began to tell a story about his experiences in Boston.  (*Id.* ¶ 13.)  He said that on one occasion he had gotten off at the wrong bus stop and ended up in the "wrong neighborhood."  (*Id.*)  He had implied that it was undesirable, and he later said it was a "black neighborhood."  (*Id.*)  McGinnis also told Finlay about a man who yelled at him asking, "Do you know what neighborhood you're in?"  (*Id.*)  Finlay felt uncomfortable by this story, particularly in light of McGinnis's distrustful shadowing.  (*Id.*)

On or about March 25, 2014, Finlay felt a sharp pain in his abdomen and was very sick.  (*Id.* ¶ 14.)  He eventually checked into a hospital and notified his supervisor, Melissa Willet, that he could not go into work that night.  (*Id.*)  After being informed by his doctors that he required surgery that same night for appendicitis, Finlay told Willet that he would need to take the night off.  (*Id.* ¶ 15.)  The surgery was successful, but his doctors prohibited him from driving for several days.  (*Id.* ¶ 16.)  Under his doctors' advice, Finlay then informed Willet that he could not work on March 26 or March 27, 2014.  (*Id.*)

On March 31, 2014, when Finlay returned to work on schedule, he was terminated by Campus President Sean London.  (*Id.* ¶ 17.)  One of London's reasons for terminating Finlay was that he "didn't know how long [Plaintiff] [was] going to be out for," referring to his surgery.  (*Id.*)  Another reason was that London was told by McGinnis that Finlay was leaving regardless, which was untrue.  (*Id.*)

Finlay filed a timely charge with the Equal Employment Opportunity Commission ("EEOC"), alleging he had been subject to race discrimination.  (*Id.* ¶ 7.)  The EEOC closed

Finlay's case on or about January 22, 2015, and issued a right-to-sue letter.  (*Id.* ¶ 8.)  Finlay then

filed suit on April 27, 2015, within ninety days of receiving this letter.  (*Id.*)

## VI.  Analysis

### A.  Exhaustion as to Title VII Claim of Hostile Work Environment

Finlay brings two claims for hostile work environment against Fortis, one under Title

VII, and the other under 42 U.S.C. § 1981.[5]  Fortis moves to dismiss the Title VII claim for lack

of subject matter jurisdiction, asserting that the judicial complaint is outside the precedent EEOC

charge's scope.  (*See* Def.'s Mot. to Dismiss Supp. Mem. 2.)  For the reasons explained below,

this portion of Defendant's motion will be granted.

Title VII prevents an employer from "discharg[ing] any individual . . . because of such

individual's race, color, religion, sex or national origin."  42 U.S.C. § 2000e-2(a)(1).  In order to

bring suit in federal court under Title VII, the "person claiming to be aggrieved" must file a

charge with the EEOC and receive a right-to-sue letter.  § 2000e-5(f)(1).  This is the "exhaustion

requirement," which "ensures that the employer is put on notice of the alleged violations so that

the matter can be resolved out of court if possible."  *Miles v. Dell, Inc.*, 429 F.3d 480, 491 (4th

Cir. 2005).  "An individual cannot bring suit until he has exhausted the administrative process."

*Chacko v. Patuxent Inst.*, 429 F.3d 505, 509 (4th Cir. 2005).

"Even after a plaintiff has exhausted his administrative remedies, [however,] the

administrative framework plays a substantial role in focusing the formal litigation it precedes."

*Id.*  Thus, "'[t]he allegations contained in the administrative charge of discrimination generally

operate to limit the scope of any subsequent judicial complaint.'"  *Id.* (quoting *Evans v. Techs.*

*Applications & Serv. Co.*, 80 F.3d 954, 962-63 (4th Cir. 1996)).  When claims exceed the scope

---

[5]  The Section 1981 hostile work environment claim in Count I is duplicated in Count IV.

of the EEOC charge, they are procedurally barred because "federal courts lack subject matter jurisdiction over Title VII claims for which a plaintiff has failed to exhaust administrative remedies." *Balas v. Huntington Ingalls Indus., Inc.*, 711 F.3d 401, 406 (4th Cir. 2013).

A judicial complaint may contain three kinds of claims derived from a precedent EEOC charge. These are "'claims stated in the initial charge, those reasonably related to the original complaint, and those developed by reasonable investigation of the original complaint.'" *Chacko*, 429 F.3d at 506 (quoting *Evans*, 80 F.3d at 963). "[P]laintiff's claim generally will be barred if his charge alleges discrimination on one basis—such as race—and he introduces another basis in formal litigation—such as sex." *Id.* at 509 (citing *Bryant v. Bell Atl. Md., Inc.*, 288 F.3d 124, 132-33 (4th Cir. 2002)). "A claim will also typically be barred if the administrative charge alleges one type of discrimination—such as discriminatory failure to promote—and the claim encompasses another type—such as discrimination in pay and benefits." *Id.* (citing *Evans*, 80 F.3d at 963-64). It is worth noting, however, that "lawyers do not typically complete the administrative charges, and so courts construe them liberally." *Id.* (citing *Alvarado v. Bd. of Trs. of Montgomery Cmty. Coll.*, 848 F.2d 457, 460 (4th Cir. 1988)).

The particulars of Finlay's EEOC charge are as follows:

I.     I began my employment with the above listed employer on November 19, 2012, as Dental Assistant Instructor. On March 31, 2014, I was discharged because my dental license expired. Almost immediately after my discharge, I was advised that Linda Einoff [*sic*] (white), Dental Assistant Instructor was hired, however, she is not licensed.

II.    I have not been provided with an explanation for the employer's unequal treatment towards me.

III.   I believe I was discharged because of my race (black), in violation of Title VII of the Civil Rights Act of 1964, as amended.

(Def.'s Mot. to Dismiss, Ex. 1-D.)   Elsewhere on the form, the only box checked for "discrimination based on" is "race," without any checkmarks for "retaliation," "disability," or "other."  (*Id.*)  Also, the "[e]arliest" and "[l]atest" dates that the "discrimination took place" were both "March 31, 2014," the date of Finlay's termination, and the box for "continuing action" is left unchecked.  (*Id.*)

Based on the limited allegations in Finlay's EEOC charge, his hostile work environment claim in his complaint in this Court is outside its scope.  A claim of hostile work environment is simply not the same as a discriminatory discharge.  Nor is it necessarily reasonably related to a discriminatory discharge.  And given the only date supplied by Finlay to the EEOC, his claim of hostile work environment prior to his termination was not likely to be included in a reasonable investigation of his claim of discriminatory discharge.  *See Chacko*, 429 F.3d at 509 ("Similarly, we have held that the allegation of a discrete act or acts in an administrative charge is insufficient when the plaintiff subsequently alleges a broader pattern of misconduct."  *Id.* (citing *Dennis v. County of Fairfax*, 55 F.3d 151, 153, 156-57) (4th Cir. 1995))).  "[A] plaintiff fails to exhaust administrative remedies where . . . his administrative charges reference different time frames, actors, and discriminatory conduct than the central factual allegations in his formal suit."  *Id.*, 429 F.3d at 506.  Not only is the time frame different from Finlay's EEOC charge to his judicial complaint—the March 31, 2014, termination versus McGinnis's earlier practice of following Finlay around while he locked the building and the one night McGinnis told his "wrong neighborhood" story—but also the conduct is different from EEOC charge to judicial complaint—instantaneous termination rather than a prolonged environmental exposure.  Further, McGinnis is nowhere mentioned in the EEOC charge.  Although EEOC charges are to be construed liberally, Finlay's charge does not present even the slightest hint of a potentially

hostile work environment to allow the EEOC to conduct the appropriate investigation.   The Court concludes Finlay's hostile work environment claim was not included in his EEOC charge, is not reasonably related to his racially discriminatory discharge claim, was not likely to be developed by reasonable investigation of the original complaint, and was, therefore, not administratively exhausted prior to suit.   For this reason, Fortis's motion to dismiss the Title VII claim of hostile work environment for lack of subject matter jurisdiction will be granted.   The hostile work environment claim pursuant to 42 U.S.C. § 1981 does not require exhaustion.   *See Johnson v. Railway Express Agency, Inc.*, 421 U.S. 454, 460 (1975).

### B.   *Sufficiency of claims under Rule 12(b)(6)*

Although Finlay's § 1981 claim of hostile work environment need not be exhausted, the Court must yet consider its sufficiency as a claim for relief.   Without repeating the allegations here, the Court concludes Finlay's allegations about McGinnis following him around while Finlay locked up the building at night and McGinnis's one story about being in the "wrong neighborhood" in Boston do not constitute either severe racial harassment or a pervasive, hostile work environment.   Finlay has failed to plausibly allege that McGinnis's "distrustful shadowing" was due to racial animus.   And the "wrong neighborhood" story, while perhaps unfortunate, does not rise to the level of a severe affront based on race.   *See Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 277-78 (4th Cir. 2015) (*en banc*) (isolated incident, if extremely serious, can amount to discriminatory change in terms and conditions of employment).   Finlay's claim of hostile work environment fails to state a claim for relief.   The corresponding portions of Counts I and II and all of Count IV will be dismissed.

### C.  *Racially Discriminatory Discharge in Violation of Title VII and Section 1981*

Fortis seeks summary judgment on Finlay's racially discriminatory discharge claims because it asserts he was terminated for a legitimate, nondiscriminatory reason, *i.e.*, Finlay failed to have a current dental assistant license.  (*See* Def.'s Mot. to Dismiss Supp. Mem. 15-19.)  The evidence offered in support of this nondiscriminatory reason for termination is deficient, however.  Fortis has provided evidence showing Finlay's replacement renewed her license *after* she was hired.  (*See* Def.'s Mot. Dismiss. Ex. 1-H (showing a lapse in licensure between February 17, 2007, and May 7, 2014).)  Defendant's argument is curious because the critical issue is what, if any, license Finlay's replacement had *at the time she was hired*.  Fortis's evidence, in itself, creates a genuine dispute of material fact, thereby preventing the rendering of summary judgment.  Further, because no discovery has occurred, it would be inappropriate for the Court to rule on summary judgment at this juncture.  Therefore, Defendant's motion for summary judgment on Finlay's racially discriminatory discharge claims will be denied without prejudice.

### D.  *Retaliation for Using Protected Leave under the Family and Medical Leave Act*

Fortis also requests summary judgment in its favor on Finlay's FMLA retaliation claim because, Fortis contends, Finlay has not plausibly alleged causation between his allegedly protected leave and Fortis's alleged retaliation.  (*See* Def.'s Mot. to Dismiss Supp. Mem. 19-21.)  Fortis argues, even assuming Finlay can prove causation, he cannot prove but-for causation because Fortis had a legitimate, nondiscriminatory reason for terminating him.  For the reasons explained below, Defendant's motion will be denied.

Although Fortis has not contended that Finlay has failed to state a claim for relief, the Court nevertheless observes that Finlay has adequately pled causation on his FMLA retaliation

claim at this stage of the litigation.  In considering Fortis's motion for summary judgment as to this count, the Court refers to the burden-shifting approach of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  "To establish a prima facie retaliation claim for discriminatory discharge under Title VII or the FMLA, the plaintiff must show: (1) protected activity; (2) 'materially' adverse employment action; and (3) a causal connection between the protected activity and materially adverse action."  *Taylor v. Rite Aid Corp.*, 993 F. Supp. 2d 551, 566 (D. Md. 2014) (citing *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)).  "If the employer takes the action 'shortly after' learning about the protected activity, courts may infer a causal connection between the two."  *Id.* (quoting *Price v. Thompson*, 380 F.3d 209, 213 (4th Cir. 2004)).  The temporal proximity of Finlay's taking leave for a serious medical condition and his termination satisfy this *prima facie* element of causation.

Fortis relies on *Taylor* for the proposition that "[t]emporal proximity between the use of leave and termination is not enough," and that Finlay has failed to prove "but-for" causation on his FMLA claim because Fortis demonstrated a legitimate, nondiscriminatory reason for terminating him.  (*See* Def.'s Mot. to Dismiss Supp. Mem. 20-21.)  The same deficiency in Fortis's proof on its claimed legitimate, nondiscriminatory reason in the context of Finlay's racial discrimination claim is equally applicable to this argument.  Because of this evidentiary deficiency, Fortis has failed to demonstrate the absence of a genuine dispute of material fact and is not entitled to summary judgment as to the FMLA claim.

### E.  Motion for Leave to File Surreply

Finlay also moves for leave to file a surreply claiming that Fortis raised new arguments in its reply.  (*See* Pl.'s Mot. Surreply, ECF No. 13.)  Defendant contends that leave should be

denied because Finlay had a full opportunity to address Fortis's arguments and that no new arguments were raised in its reply.  (Def.'s Opp'n, ECF No. 14.)

"Unless otherwise ordered by the Court, surreply memoranda are not permitted to be filed."  Local Rule 105.2(a) (D. Md. 2014).  However, "[s]urreplies may be permitted when the moving party would be unable to contest matters presented to the court for the first time in the opposing party's reply."  *Khoury v. Meserve*, 268 F. Supp. 2d 600, 605 (D. Md. 2003) (citing *Lewis v. Rumsfeld*, 154 F. Supp. 2d 56, 61 (D.D.C. 2001)), *aff'd*, 85 F. App'x 960 (4th Cir. 2004) (unpublished).  The Court notes Defendant's proffer in its reply of new exhibits pertaining to Einolf's hiring and the alleged requirement of having a license for the instructor position.  (*See* Def.'s Reply, Ex. 1.)  It is appropriate to give Finlay an opportunity to respond to this new evidence.  His motion will be granted.

## VII.  Conclusion

Accordingly, for the reasons discussed supra, Defendant's Motion to Dismiss or, in the alternative, for Summary Judgment, will be granted in part and denied in part.  It will be granted as to Finlay's hostile work environment claims and otherwise denied.  At his request, Finlay's ADA claim will be dismissed without prejudice.  Finally, Finlay's motion for leave to file a surreply will be granted.  A separate order follows.

DATED this 8th day of October, 2015.

BY THE COURT:

_____/s/_____
James K. Bredar
United States District Judge